## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| WEELAPAN KERN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. |
| | ) | |
| STANDARD FIRE INSURANCE | ) | 2:05-CV-00698-DRB |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF UNDISPUTED FACTS AND MEMORANDUM
## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Comes now Defendant The Standard Fire Insurance Company, incorrectly identified as "Standard Fire Insurance Company," ("Standard Fire") and submits its Statement of Undisputed Facts and Memorandum Brief in Support of Motion for Summary Judgment:

### PROCEDURAL FACTS

This case involves an insurance coverage dispute in which Plaintiff claims benefits of an expired automobile insurance policy. Plaintiff alleges four counts in his complaint and amended complaint. The original complaint asserts causes of action against Standard Fire for breach of contract (Count I) and bad faith failure to pay and investigate the claim (Count II). (Doc. 2.) Plaintiff amended his complaint to add Colonial Insurance Agency as a defendant and to assert additional claims of intentional fraud (Count III) and negligent and/or reckless fraud (Count IV) against Colonial and Standard Fire based on a theory of vicarious liability. (Doc. 18.)  On January 30, 2006, Plaintiff filed a motion to dismiss Colonial Insurance Agency as a defendant. (Doc. 26.)

On January 31, 2006, this Court granted said motion and dismissed Colonial without prejudice. (Doc. 28.)

## SUMMARY OF UNDISPUTED FACTS

Plaintiff, Weelapan Kern, was 39 years old at the time of the transaction made the basis of this lawsuit. (**Exhibit 1,** Plaintiff's Deposition at p.9:4-5). Plaintiff is a high school graduate and he attended one year of college. (**Exhibit 1** at pp.17:15-23; 18:1-15). Plaintiff was a restaurant manager in Chicago, Illinois for five years before moving to Montgomery. (**Exhibit 1** at p.20:3-17.) Once in Montgomery, Plaintiff formed AlaThai, Inc., a corporation that owns and operates two restaurants in the Montgomery area. (**Exhibit 1** at pp.13:1-10; 16:13-14). Plaintiff is the sole shareholder and the sole officer of the corporation. (**Exhibit 1** at p.16:13-23). Plaintiff had purchased automobile, home, and commercial insurance coverage for a number of years prior to the incidents forming the basis of this lawsuit. (**Exhibit 1** at p.26: 1-23).

In 2003, Plaintiff purchased a Mitsubishi Montero. (**Exhibit 1** at p. 24:8-20.) Plaintiff purchased a policy of automobile liability insurance issued by Standard Fire for the Montero. (**Exhibit 1** at p.33:6-11.) The Standard Fire policy had an effective date of November 11, 2003, and an expiration date of November 11, 2004. (**Exhibit 1** at pp.32-34; **Exhibit 2,** Automobile Insurance Identification Card; **Exhibit 3,** Certified Copy of Policy at bates-labeled SF 0043.) It is undisputed that Plaintiff received a copy of an Automobile Liability Insurance Identification Card for the Standard Fire policy, which includes the effective date and expiration date. (See **Exhibit 1** at p.33:17-21). It is also undisputed that Plaintiff received a copy of his automobile policy issued by Standard Fire, which includes the effective date and expiration date of the policy. (See **Exhibit 1**

at pp.33-34). Plaintiff acknowledges that the Standard Fire policy expired on November 11, 2004. (**Exhibit 1** at p.43:17-21).

On November 11, 2004, the Standard Fire policy expired on its own terms for non-payment of premiums. (**Exhibit 1** at p.34:13-15; see also **Exhibit 5,** Offer to Reinstate.) The policy was not canceled during the policy period; rather, it expired on November 11, 2004, the stated expiration date. (**Exhibit 4**, Plaintiff's Supp. Responses to Requests for Admission No. 2; **Exhibit 5**; **Exhibit 1** at p. 43:18-21.)

On December 22, 2004, Standard Fire sent Plaintiff an Offer to Reinstate the Standard Fire policy. (**Exhibit 5**; **Exhibit 4**, Plaintiff's Supp. Responses to Requests for Admission No. 5). The Offer to Reinstate unequivocally states that Plaintiff's policy expired on November 11, 2004. (**Exhibit 4**, Plaintiff's Supp. Responses to Requests for Admission No. 6). The offer to reinstate also provided that, in order to reinstate the policy, Standard Fire must receive a the "MINIMUM AMOUNT DUE" of $445.59 from Plaintiff no later than January 11, 2005. (**Exhibit 5**; **Exhibit 4**, Plaintiff's Supp. Responses to Requests for Admission Nos. 7-8). Plaintiff admits that he received the Offer to Reinstate, he read the Offer to Reinstate, and that he understood that his policy was not in effect but could be reinstated if he complied with the terms of the offer. (**Exhibit 1** at pp.43-46).

Plaintiff testified that, upon receipt of the December 22, 2004 Offer to Reinstate from Standard Fire, he called his insurance agent, Colonial Insurance Agency, to inquire about the document. (See **Exhibit 1** at p.46).[1] Plaintiff does not know when he spoke with anyone at Colonial

---

[1] Standard Fire disputes that Plaintiff ever spoke with anyone at Colonial, and has submitted an affidavit from Colonial supporting that assertion with the Motion for Summary Judgment. (**Exhibit 6**, Affidavit of Cheryl Azar.) However, Standard Fire is mindful that the facts on a motion for summary judgment are to be viewed in a light most favorable to the non-

Insurance Agency regarding the Offer to Reinstate -- he does not know whether it was prior to the January 11, 2005 deadline, or after the deadline. (See **Exhibit 1** at pp. 108-110.) It is undisputed that Plaintiff never spoke with anyone at Standard Fire regarding his automobile insurance or the Offer to Reinstate. (See **Exhibit 1** at pp. 58:1-7.).

Plaintiff testified that he was "busy" and "didn't follow up" on the Offer to Reinstate after his conversation with Colonial. (See **Exhibit 1** at p. 48:5-7). Plaintiff testified that he did not immediately send the money to Standard Fire after he spoke to someone at Colonial. (See **Exhibit 1** at p. 48:18-21). Plaintiff further admits that did not pay the "MINIMUM AMOUNT DUE" by the January 11, 2005 deadline. (See **Exhibit 1** at pp. 44-45; **Exhibit 4,** Plaintiff's Supp. Responses to Requests for Admission No. 9). Plaintiff admits that the Standard Fire policy was not reinstated on January 11, 2005, the deadline set forth in the Offer to Reinstate. (**Exhibit 4**, Plaintiff's Supp. Responses to Requests for Admission No. 10).

Despite the fact that the January 11, 2005 passed, on January 27, 2005 (16 days later), Plaintiff mailed an $800 check to Standard Fire. (**Exhibit 1** at pp. 48, 51-52; **Exhibit 7,** Copy of January 27, 2005 check; **Exhibit 4**, Plaintiff's Supp. Responses to Requests for Admission No. 11). Plaintiff admits that he did not mail his check until after the January 11, 2005 deadline and that a period of time went by between the time of his conversation with Colonial and the time that he wrote the premium check. (**Exhibit 1** at pp. 48, 51-52; **Exhibit 7.**)

---

movant plaintiff. Accordingly, Standard Fire proceeds as though Plaintiff's version of the facts is true. Even viewing the facts in the light most favorable to the Plaintiff, Standard Fire avers that the very testimony he has presented on that issue provides sufficient evidence upon which to support a summary judgment. (**Exhibit 1**, pp. 46-49; 75-76; 108-110 for conflicting testimony directly from Plaintiff and his ultimate admission that he does not recall whether he spoke to someone at Colonial before or after the January 11, 2005 deadline and what exactly was said).

4

As is Standard Fire's usual business practice upon receipt of all premium checks, Standard Fire automatically deposited Plaintiff's check upon receipt on Friday, February 4, 2005. (**Exhibit 8,** Affidavit of Richard Finchum). At that time, the check was not applied to any account or any policy. (**Exhibit 8.**) Monday, February 7, 2005 was the next business day after the deposit of the check. Id. At that time, the Standard Fire computer system was able to search the Standard Fire accounts to determine whether Plaintiff had an existing policy or account to which the check could be credited. Id. Once such a search was conducted, Standard Fire discovered that Plaintiff did not have any policy in effect and that the December 22, 2004 Offer to Reinstate his prior policy expired on January 11, 2005. Id. Since no policy existed to which the check could be applied, Standard Fire, on February 7, 2005, immediately began the procedure to refund the amounts paid by Plaintiff. Id. Standard Fire issued a refund check to Plaintiff in the amount of $800 on February 17, 2005, which remains in Plaintiff's possession. (Id.; see also **Exhibit 4,** Plaintiff's Supp. Responses to Requests for Admission No. 13; **Exhibit 1** at pp. 86-87.)

In the interim, Plaintiff was involved in an automobile accident on Saturday, February 5, 2005. (**Exhibit 1** at p.59). In the accident, Plaintiff caused damaged to the car of two other drivers and he damaged his own car. (**Exhibit 10,** Plaintiff's Responses to Interrogatories No. 5). Plaintiff contacted Colonial Insurance Agency on February 7, 2005 to advise them of the accident. (**Exhibit 1** at p.61:10-11). Standard Fire did not receive notice of the Plaintiff's accident until February 10, 2005. (See **Exhibit 11** at bates-numbered SF 0090, Standard Fire's Claims Notes and Authenticating Affidavit of Steven Herron).

5

On February 10, 2005, Chris Setzer of Colonial Insurance Agency sent Plaintiff a letter advising him that the Standard Fire[2] policy effectively non-renewed for non-payment of premiums on November 11, 2004. (**Exhibit 12.**) The letter further advises that Standard Fire received the payment of $800 on February 7, 2005 and is refunding the premium payment since the premium was received after non-renewal. Id.

Standard Fire never applied the $800 check to any policy of Plaintiff because, upon receipt of the check and entry into the Standard Fire computer system on February 7, 2005, Standard Fire determined that no policy existed to which the check could be applied. (See **Exhibit 8.**). Standard Fire issued a refund check in the amount of $800 to the plaintiff on February 17, 2005. (**Exhibit 9**; see also **Exhibit 4**, Plaintiff's Supp. Responses to Reqeusts for Admission No. 13).

Standard Fire denied Plaintiff's claim for coverage because his automobile policy expired in November 11, 2004 for non-payment of premiums, and Plaintiff failed to send in the "MINIMUM AMOUNT DUE" by January 11, 2005 as required by the December 22, 2004 Offer to Reinstate. (See **Exhibit 13**, March 28, 2005 letter from Standard Fire to Gary E. Atchison, attorney for Plaintiff; **Exhibit 14**, May 19, 2005 letter from Standard Fire to Gary E. Atchison, attorney for Plaintiff.

On February 10, 2005, Chris Setzer of Colonial Insurance Agency offered Plaintiff a quote for replacement automobile insurance "for the same coverage amounts you had with [Standard Fire], . . . ." (**Exhibit 12**; see also **Exhibit 4**, Plaintiff's Supp. Responses to Requests for Admission Nos.

---

[2] Standard Fire is referred to on several occasions as Travelers by the Colonial Agency. Standard Fire which is a wholly owned subsidiary of St. Paul Travelers Companies.

16-17). Plaintiff did not accept Colonial Insurance Agency's offer of replacement insurance, and, to date, Plaintiff has not obtained replacement insurance for his vehicle. (See **Exhibit 1** at p. 84.)

Plaintiff has never spoken directly with anyone at Standard Fire. (See **Exhibit 1** at pp. 89:22-23; 90:1-14; 91:2-23; 92:1-16).

## ARGUMENT

## I.    COUNT I:  BREACH OF CONTRACT

"One of the elements of a breach-of-contract claim under Alabama law is the existence of 'a valid contract binding the parties.'" Avis Rent a Car System. v. Heilman, 876 So. 2d 1111, 1118 (Ala. 2003) (quoting Reynolds Metals Co. v. Hill, 825 So. 2d 100, 105 (Ala. 2002)). Therefore, in order for Plaintiff to maintain a breach of contract action, he bears the burden of providing substantial evidence that a contract existed. State Farm Fire & Cas. Co. v. Williams, 2005 Ala. LEXIS 127, *10-11 (citing State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 29, 303 (Ala. 1999)). In the present case, Plaintiff cannot maintain a breach-of-contract claim against Standard Fire because no contract existed between Standard Fire and Plaintiff on February 5, 2005 -- the date of Plaintiff's automobile accident.

By its own terms, Plaintiff's Standard Fire automobile policy had an effective date of November 11, 2003, and an expiration date of November 11, 2004. It is undisputed that the policy expired on November 11, 2004 for nonpayment of premiums. See Floyd v. Allstate Ins. Co., 989 F. Supp. 1435, 1438 (M.D. Ala. 1998) ("'where an agreement provides for termination at a certain time, no notice of termination is necessary. . . The express provisions of the complainant's policy of insurance were sufficient to apprize him of the policy period and the time when his insurance coverage would expire'") (applying Alabama law) (internal citation omitted).

7

After the expiration of the policy on November 11, 2004, Standard Fire sent Plaintiff an Offer to Reinstate on December 22, 2004. The Offer to Reinstate included a deadline for the payment of a "MINIMUM AMOUNT DUE" on or before January 11, 2005. The expired 2003-2004 policy contains the following relevant provision:

> **C.    Automatic Termination.**    If we offer to continue and you or your representative do not accept, this policy will automatically terminate without notice of termination at the end of the current policy period. Failure to pay the required continuation premium when due shall mean that you have not accepted our offer.

**(Exhibit 8:** Policy Form PL-6000 3-87, page 13 of 13). It is undisputed that Plaintiff did not pay the "MINIMUM AMOUNT DUE" by January 11, 2005 and that the Offer to Reinstate expired. As a result, there was no contract between Standard Fire and Plaintiff at the time of his automobile accident on February 5, 2005.

A policy provision similar to that cited above was applied by the Honorable Ira DeMent in Floyd v. Allstate Ins. Co., 989 F.Supp.1435 (M.D. Ala. 1998). In applying the provision, Judge DeMent cited the Alabama Supreme Court opinion of Haupt v. Midland National Life Ins. Co., 567 So. 2d 1319 (Ala. 1990). In so doing, the Court noted the Supreme Court's holding:

> [I]f the policy provides . . . that failure to pay the premium causes the contract to end, then the insured is contractually bound either to pay the premiums or lose coverage . . . In light of the provision of the insurance policy terminating the policy if the insured fails to pay the premiums, [Plaintiff's] argument will not withstand scrutiny. [Plaintiff] should not expect the policy to remain in force even if the premiums are not paid. To allow her to accept the benefits of the policy without paying the premiums would allow her to receive the benefit of the bargain at no cost. Indeed, the "bargain" was never consummated.

Floyd v. Allstate Ins. Co., 989 F.Supp.1435, 1441 (M.D. Ala. 1998) citing Haupt v. Midland National Life Ins. Co., 567 So.2d 1319, 1321 (Ala. 1990)).[3]

According to Alabama law, "[a] renewal is, in effect, a new contract of insurance, especially when not provided for in the original policy, at least in the sense that it requires the mutual assent of the parties and a new consideration. The agreement to renew must have all the essentials for a valid contract. 26 C.J.S 109, § 108.'" Employers Ins. Co. of Ala., Inc. v. Hare, 292 Ala. 637, 640, 299 So. 2d 243, 245 (1974) (quoting City Mortgage & Discount Co. v. Palatine Ins. Co., 226 Ala. 179, 145 So. 490 (1933)). Alabama law is clear that, in similar non-renewal situations, the renewal provisions of the previous policy, if clear and unambiguous, serve to govern the rights and responsibilities of the parties.

In the present case, Plaintiff received a copy of his policy from Standard Fire and was aware that his policy expired by its own terms of November 11, 2004. Plaintiff received an Offer to Reinstate on December 22, 2004; was aware that the Offer to Reinstate expired on January 11, 2005; and admits that he did not accept the offer by the January 11, 2005 deadline. Thus, it is clear under Alabama law and the renewal terms of the previous policy that no policy was in place at the time of his automobile accident on Saturday, February 5, 2005.

Plaintiff's submission of the random amount of $800 to Standard Fire some sixteen days after the offer expired is insufficient to create an insurance contract upon which a breach of contract can be maintained. Standard Fire never applied the payment to any policy of insurance; rather, as soon

---

[3] The plaintiff in Haupt failed to pay the premiums on her husband's life insurance policy. The court determined that the policy provision advising of the policy's termination upon failure to remit premiums was sufficient to terminate the policy and provided sufficient grounds for the denial of the claim.

9

as it determined that there was no policy in place, it began the process of refunding the money to him, even before receiving notice of the accident. Simply put, Plaintiff did not comply with the terms of the December 22, 2004 offer, and it expired without acceptance. As such, under existing Alabama law, there is no contract and no issue of material fact exists for the trier of fact to consider. Standard Fire properly denied Plaintiff's claim for coverage, and it is entitled to summary judgment on Plaintiff's breach of contract claim as a matter of law.

## II.    **COUNT II - BAD FAITH**

### A.    **PLAINTIFF'S INTENTIONAL DENIAL CLAIM.**

Plaintiff cannot maintain his claim for bad faith due to an alleged intentional denial on the part of Standard Fire and failure to pay insurance benefits. This type of bad faith claim is referred to as a "normal" bad faith claim in Alabama. To succeed on a bad faith-failure-to-pay claim against Standard Fire in this case, Plaintiff must carry the burden of proving each of the following: "(a) The existence of an insurance contract between the parties and a breach of that contract by the insurer; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate, debatable or arguable reason for that refusal; and (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason."   Simmons v. Congress Life Ins. Co. and Insurers Admin. Corp., 791 So. 2d 371, 378 (Ala. 2000) (quoting National Security Casualty Co. v. Bowen, 417 So. 2d 179, 183 (Ala. 1982)). In order to maintain a claim for bad faith failure to pay, Plaintiff must prove that there is no issue of fact regarding the validity of the claim and that he is entitled to a directed verdict on the breach of contract claim. See National Sav. Life Ins. Co. v. Dutton, 419 So. 2d 1357, 1362 (Ala. 1982).

10

Alabama courts afford insurance carriers full entitlement to rely on the terms and defenses set out in the contract. Alabama does not permit the imposition of damages for bad faith based on a legitimate interpretation of the provisions of the insurance contract. "'[I]f any one of the reasons for denial of coverage is at least "arguable" this Court need not look any further,' and a claim for bad faith refusal to pay the claim will not lie." ALFA Mutual Ins. Co. v. Smith, 540 So. 2d 691, 695 (Ala.1988) (quoting McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co., 437 So. 2d 86, 91 (Ala.1983)); see also Liberty National Life Ins. Co v. Allen, 699 So. 2d 138 (Ala. 1997). In other words, even if the insurer is in error in its denial of coverage, and even if its coverage analysis is eventually proved incorrect or flawed, no bad faith liability will attach if the insurer's position was "at least arguable."

Alabama courts impose a heavy burden of proof on plaintiffs asserting a claim for bad faith. LeFevre v. Westberry, 590 So. 2d 154, 159 (Ala.1991). The plaintiff must carry the burden of establishing not only that the insurer was wrong in its position, but also must further carry the heavier burden of establishing that the insurer had no legal or factual defense to the claim. That is, the plaintiff must prove the absence of even so much as a debatable reason in law or fact for the denial. "[P]laintiff must show that the insurer's decision not to pay was without any ground for dispute." LeFevre, 590 So. 2d at 159. "'[T]he insured must eliminate any arguable reason propounded by the insurer for refusing to pay the claim.'" LeFevre, 590 So. 2d at 159 (quoting Burns v. Motor Ins. Corp., 530 So. 2d 824, 827 (Ala. Civ. App. 1987)).

From the infancy of the tort of bad faith, the Alabama Supreme Court has stressed the heavy burden that must be carried by a plaintiff seeking to prove a claim of bad faith. In National Security

11

Fire & Casualty Co. v. Bowen, 417 So. 2d 179 (Ala. 1982), the Alabama Supreme Court discussed the burden that must be met by a plaintiff to recover under a theory of bad faith:

> [T]he plaintiff must show that the insurance company had no legal or factual defense to the insurance claim. The "debatable reason" . . . above means an arguable reason, one that is open to dispute or question.

Bowen, 417 So. 2d. at 183. In Jones v. Alabama Farm Bureau Mutual Casualty Co., 507 So. 2d. 396 (Ala. 1986), Chief Justice Torbert stated, "a bad faith claim under Alabama law 'ultimately depends upon whether there is a debatable reason for denying the claim.'" Jones, 507 So. 2d at 402 (Torbert C.J., concurring specially). The Alabama Supreme Court has continued its adherence to this basic principle: "[P]roof of mere negligence or mistake is not sufficient to support a claim of bad faith; there must be a refusal to pay, coupled with a conscious intent to injure." Davis v. Cotton States Mut. Ins. Co., 604 So. 2d 354, 359 (Ala. 1992).

Plaintiff in this case cannot meet the required burden of proof under the facts presented. First, and foremost, Plaintiff cannot carry his threshold burden of proving the existence of an insurance contract.   See supra pp. 7-10.  Accordingly, Plaintiff cannot maintain an intentional denial/bad-faith-failure-to-pay claim against Standard Fire in this case.

Even if this was not the case, it is undisputed that Standard Fire had reasonably legitimate, debatable, or arguable reasons for denying Plaintiff's claim.  Put another way, Alabama law states that, in order for a plaintiff to maintain a claim for  intentional bad faith denial, he must show that there was a "nonpayment without any reasonable ground for dispute." National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179 (Ala. 1982).  Plaintiff cannot carry this heavy burden.  The Alabama Supreme Court holds that failure to pay the premiums on an insurance policy is a legitimate

and debatable reason for denial of a claim, and will defeating a claim for intentional denial under Alabama law.  See Johnson v. Centennial Life Ins. Co., 705 So. 2d 490 (Ala. 1997).

In the present case, it is undisputed that Plaintiff did not pay his premiums in the time required by the Offer to Reinstate.  Standard Fire denied his claim based on that fact.  Said denial under the facts of this case, even when viewed in the light most favorable to Plaintiff, is not sufficient to create an issue of material fact on Plaintiff's intentional denial claim.

**B.     PLAINTIFF'S BAD-FAITH-FAILURE-TO-INVESTIGATE CLAIM.**

Plaintiff also asserts a claim against Standard Fire for "abnormal" bad faith failure to investigate Plaintiff's claim.  The Alabama Supreme Court has stated that "[b]ad faith . . . is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of a known duty, i.e. good faith and fair dealing, through some motive of self-interest or ill will." Singleton v. State Farm Fire & Casualty Co., 2005 LEXIS 192, *2 (quoting Slade v. State Farm Fire & Casualty Co., 747 So. 2d 293, 303-304 (Ala. 1999)). In a recent case before the Honorable Myron Thompson regarding claims of bad faith, the Court stated:

> [T]he Alabama Supreme Court has identified exceptions, or "abnormal" cases, in which bad faith can consist of: (1) intentional or reckless failure to "properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review," Thomas v. Principle Financial Group, 566 So. 2d 735, 744 (Ala. 1990); (2) the manufacture of a debatable reason to deny a claim, Slade, 747 So. 2d at 306; or (3) reliance on a "subjective belief" that an ambiguous portion of a policy provides a basis for denying a claim. Id.

Black-Gammons v. Zurich American Ins. Co., 2006 LEXIS 1942, *13 (M.D. Ala. 2006) (Thompson, J).   The burden on a plaintiff to prove "abnormal" bad faith in Alabama is exceedingly high.  In

West Beach Development Co., L.L.C. v. Royal Indemnity Co., 2000 LEXIS 13596 (S.D. Ala. 2000),

the Court held:

> In order to recover under a theory of an abnormal case of bad-faith failure to investigate an insurance claim, "the insured must show (1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim. . . . When the Alabama Supreme Court recognized the tort of bad faith in this context, it intended to limit liability under that tort to those instances in which the insured's losses were covered under the policy."

West Beach Development Co., 2000 LEXIS 13596, *16 (further citations omitted). "The 'primary'

consideration in this type of bad faith case is whether a claim was properly investigated and whether

the results of the investigation were subjected to a cognitive evaluation and review. . . If plaintiff's

evidence 'fails to eliminate any arguable reason on a matter of fact or a matter of law, [plaintiff]

cannot recover under the tort of 'bad faith. . .'." Id. at *18 (further citations omitted.)

Under the facts of this case, even when viewed in a light most favorable to Plaintiff,

Plaintiff's claims for bad faith are due to be dismissed as a matter of law. Plaintiff cannot show that

Standard Fire failed to properly investigate the claim or to subject the results of the investigation to

a "cognitive evaluation and review," nor can Plaintiff show that Standard Fire breached any

insurance contract when it denied the claim.   Most importantly, by the time that Standard Fire

received notice of Plaintiff's claim on February 10, 2005, Standard Fire had already realized that

Plaintiff's policy had expired by its own terms and that Plaintiff had failed to accept the Offer to

Reinstate by the deadline set forth therein. In fact, on February 7, 2005 (three days before receiving

notice of Plaintiff's claim), Standard Fire had begun the process of fully refunding Plaintiff's $800

payment, which was not applied to any policy of insurance because none existed at the time.  After

14

Standard Fire received Plaintiff's notice, it investigated the facts surrounding the expiration of Plaintiff's policy on November 11, 2004 and Plaintiff's failure to accept the Offer of Reinstatement by the deadline of January 11, 2005. (See **Exhibit 11**, Claims Notes and Authenticating Affidavit of Steve Herron).

Plaintiff can present no evidence, much less the requisite substantial evidence, that Standard Fire acted in bad faith in denying Plaintiff's claims for his failure to accept the Offer to Reinstate within the time allowed.


## III.    COUNTS III AND IV: FRAUD

Plaintiff also asserts claims against Standard Fire for intentional fraud (Count III) and reckless and negligent fraud (Count IV).  Plaintiff bases his fraud claims on Standard Fire's alleged vicarious liability for the acts and activities of Colonial Insurance Agency.[4]  It is undisputed that Plaintiff never had any conversations with anyone at Standard Fire.  Any and all conversations that Plaintiff claims to have had regarding his claim and his insurance policy were with Colonial Insurance Agency.  Therefore, the only theory of liability against Standard Fire that Plaintiff can maintain for fraud is one of vicarious liability/respondeat superior.

Plaintiff's fraud claims are due to be dismissed on two grounds: (1)  the dismissal of Colonial, along with the operation of the Court's Scheduling Order, creates a final dismissal with prejudice in favor of Colonial, which precludes any claim of respondeat superior liability against

---

[4]Standard Fire does not concede that Colonial Insurance Agency is Standard Fire's agent. However, for purposes of summary judgment, where the facts are to be viewed in the light most favorable to the non-movant plaintiff, Standard Fire proceeds as if Plaintiff's allegation that Colonial is Standard Fire's agent is true.

Standard Fire;  and (2) Plaintiff cannot present substantial evidence to prove the elements of his

fraud claim.

A.   **THE DISMISSAL OF COLONIAL ENTITLES STANDARD FIRE TO A SUMMARY JUDGMENT ON PLAINTIFF'S FRAUD CLAIMS.**

Alabama law is clear that "[w]hen a principal and his agent are sued in a joint action in tort

for misfeasance or malfeasance of the servant, and his liability for the conduct of said servant is

under the rule of respondeat superior, a verdict in favor of the servant entitles the master to have the

verdict against him set aside." Barlow v. Liberty Nat'l Life Ins. Co., 708 So. 2d 168, 173 (Ala. Civ.

App. 1997) (quoting Larry Terry Contractors, Inc. v. Bogle, 404 So. 2d 613, 614 (Ala. 1981)).

Where the only theory against the principal is based on respondeat superior, a verdict against the

principal can only stand when there is a verdict also against the agent as such a verdict would

otherwise be inconsistent. Larry Terry Contractors, Inc. v. Bogle, 404 So. 2d 613, 614 (Ala. 1981).

Under Alabama law, a dismissal *with prejudice* "constitutes an adjudication on the merits that bars

any subsequent litigation." Barlow v. Liberty Nat'l Life Ins. Co., 708 So. 2d 168, 173 (Ala. Civ.

App. 1997) (citations omitted).

While the effects of a judgment in a case involving respondeat superior liability are issues

of state law, the nature of the judgment entered on a motion under Federal Rule of Civil Procedure

41 is an issue of federal procedural law.   The Eleventh Circuit Court of Appeals holds that :

> In dismissing the complaint, the district court may also provide for a stated period
> within which the plaintiff may amend the complaint. If the plaintiff does not amend
> the complaint within the time allowed, no amendment may be made absent leave of
> court, and the dismissal order becomes final at the end of the stated period.

Schurman v. The Motor Vessel "Betty KV", 798 F.2d 442, 445 (11th Cir. 1986). While the dismissal

of the complaint in the Schurman case involved a dismissal of the plaintiff's entire claim and

16

indicated a specific time frame in which the plaintiff was allowed to amend, the rule set forth in the opinion is likewise applicable in this case.

This Court entered an Order dismissing Plaintiff's claims for fraud against Colonial Insurance without prejudice on January 31, 2006. Standard Fire recognizes that this dismissal without prejudice is not a final judgment or an adjudication on the merits in favor of Colonial. However, the Court's scheduling Order states that "[a]ny motions to amend the pleadings and to add parties shall be filed no later than: . . . **Plaintiff: December 6, 2005.**" (Doc. 17.) As in Schurman, this Court placed a specific deadline of December 6, 2005 on Plaintiff by which he could move to amend his complaint. If Plaintiff is now precluded from amending the complaint by operation of this Court's Scheduling Order, then under the Schurman rule, the dismissal in favor of Colonial has now become final and is with prejudice.

If this Court determines that the Schurman rule applies and that the dismissal is now final and with prejudice, then Alabama law dictates that Plaintiff's fraud claims against Standard Fire be dismissed. Under the rule of law set forth above, any dismissal with prejudice is the final adjudication on the merits against the agent contemplated by the rules set forth in Barlow and Larry Terry Contractors. Therefore, Plaintiff's claims for fraud against Standard Fire, which are based solely on a theory of respondeat superior, are due to be dismissed with prejudice also since any verdict against Standard Fire will be inconsistent.

**B.    PLAINTIFF CANNOT PRESENT SUBSTANTIAL EVIDENCE OF FRAUD.**

Under Alabama law, a plaintiff must establish each of the following elements with substantial evidence in order to survive summary judgment on his fraud claims: (1) a misrepresentation, (2) the misrepresentation involved a material fact, (3) the plaintiff relied on the representation, and (4) the

17

plaintiff was damaged.  Baker v. Metropolitan Life Insurance Co., 907 So. 2d 419 (Ala. 2005).

Plaintiff is unable to establish several essential elements of his fraud claims, and Standard Fire is

entitled to summary judgment on Counts III and IV of Plaintiff's complaints.

### 1. Plaintiff cannot prove the existence of a misrepresentation.

First, even assuming all of Plaintiff's testimony is true and that all of the evidence is viewed

in the light most favorable to Plaintiff, Plaintiff cannot establish that a misrepresentation was made

to him by anyone.  By Plaintiff's own admission, there is only one statement that forms the basis of

his  fraud claims – an alleged statement made by Colonial to him that, if he paid the money and sent

it to Standard Fire, the policy would be reinstated and there would be no gap in coverage.  It is

necessarily critical to the viability of Plaintiff's fraud claims that he able to affirmatively say whether

the statement took place before or after the January 11, 2005 deadline set forth in the December 22,

2004 Offer to Reinstate.  This so because **when** the alleged statement was made will determine

whether the statement was true or false.  By his own admission, Plaintiff cannot affirmatively state

when the alleged statement was made, and cannot present substantial evidence that the statement was

even false, if it was made at all.

In his deposition, Plaintiff changed his testimony regarding the timing of the alleged

misrepresentation at the center of his case three times.  Plaintiff consistently testified that Colonial,

at some point, told him to send an amount of money to Standard Fire for his automobile policy and

that the policy would be reinstated without interruption.  (See **Exhibit 1**, p.46: 10-14.)  Plaintiff,

however, cannot state **when** Colonial told him to send in the money.  This testimony is critical to

the determination of whether the statement was true or false.  Clearly, any such statement made by

Colonial **before** the Offer to Reinstate expired on January 11, 2005 would have been true, because

the offer would have still be open to him and he could have accepted it by paying the premium amount.  On page 47 of his deposition, Plaintiff initially states that he cannot testify as to when Colonial made the alleged statement to him.  Plaintiff then affirmatively states that Colonial told him this **before** January 11, which was the deadline for the reinstatement offer to be accepted.

> Q:    When did you call Colonial?
>
> A:    Right after I received this notice.  And I called them, I don't know . . .
>
> Q.    . . . Yes, sir.  Did you speak to them before January 11?
>
> A:    January 11.
>
> Q:    Which is the due date.
>
> A:    I believe so.

**(See Exhibit 1** at p.47).  Later in the deposition after a break, however, Plaintiff changed his testimony on this critical point of when the conversation with Colonial took place:

> Q:    Do you recall when you spoke to Colonial Insurance about this offer to reinstate?
>
> A:    About a couple of weeks after that, after January 11.
>
> . . .
>
> Q:    So your testimony now is that you spoke to somebody at Colonial insurance?
>
> A:    Colonial Insurance, yes.  They told me to send eight hundred dollars, my policy will be reinstated.
>
> Q:    And your testimony now is that that conversation was after January 11?
>
> A:    Yes. I was busy.

**Exhibit 1** at p.75:21-23; p.76:1-11.

Finally, Mr. Kern changes his mind a third time and decided that he did not, in fact, know when the alleged conversation took place with Colonial about the offer to reinstate the policy:

Q:     Mr. Kern, this conversation you said you had with somebody at Colonial after January 11, 2005, do you have any notes of the conversation?

A:     No.

Q:     You didn't make any notes at the time you spoke with somebody there?

A:     No.

Q:     How do you know it was after January 11, 2005?

A:     How do I know?

Q:     Yes, sir. If you received this notice on December 22, 2004, how do you know it was after January 11, 2005.

A:     Repeat the question again.

Q:     Sure. Earlier in the day you said you couldn't remember when you talked to them, then your testimony became that you were certain that it was after January 11, 2005.
       My question to you is how can you be so certain that it was after January 11, 2005, that you spoke to Colonial?

. . .

A:     I got this letter and a couple of weeks after that I called them, and they said to send in money, and it will be reinstated, don't worry about it.

. . .

Q:     Do you know what day it was that you spoke to the people at Colonial about this?

A:     No, I don't. I spoke to a lot of people every day. I'm sorry.

Q:     You can't remember exactly when it was; is that correct?

. . .

20

A:    That's correct.  I can't remember.

(**Exhibit 1** at pp. 108-110).

The sum of Plaintiff's deposition testimony is that he does not know when he spoke with Colonial about the offer to reinstate.  Moreover, Plaintiff testified that he does not recall with whom he spoke at Colonial, other than, when pressed, he seemed to recall that it was a woman who answered the telephone.  (**Exhibit 1** at pp. 77-78.)

The evidence in the form of affidavit testimony from Cheryl Azar at Colonial Insurance establishes that no conversation with Plaintiff ever took place.  However, for purposes of summary judgment, Standard Fire assumes that Plaintiff did have a conversation with Colonial.  Even so, Plaintiff still cannot prevail on his claims of fraud.  This Court need not determine whether the statement was actually made by Colonial; rather, it need only determine if Plaintiff has presented substantial evidence that the alleged statement was made **after** the offer expired.   It is critical under the facts of this case that Plaintiff be able to establish that Colonial made the alleged statements **after** the expiration of the offer on January 11, 2006.  If Plaintiff cannot prove this, he cannot prove that the statement was false (assuming that it was made at all), and he cannot sustain a claim for fraud.

After initially saying he could not remember when some unknown person at Colonial made the alleged statement (whether before of after the January 11, 2005 deadline), Plaintiff changed his testimony to say that it was made before January 11.  He then changed his testimony again to say the statement was made after January 11.  Finally, Plaintiff conceded that he could not remember exactly when the statement was made and that he could not state with certainty whether it was before or after January 11, 2006.  The only credible and non-speculative evidence before this Court that establishes when the statement even could have taken place is the affidavit testimony of Colonial, whose logs

21

and business records establish that the call was never made. Plaintiff's inability to affirmatively state when the statement was made means that he can never prove its falsity. As such, he cannot satisfy the first essential element of his fraud claim: i.e. that there was a misrepresentation. Plaintiff has failed to present substantial evidence that a false statement was made to him that the policy would be reinstated after the expiration of the offer. As such, he cannot establish the first element of his fraud claim, and his fraud claims are due to be dismissed.

      **2.**     **Plaintiff cannot prove he reasonably relied on any alleged misrpresentation.**

Even if Plaintiff could prove that a misrepresentation was made to him, he still cannot prevail on his fraud claims. Alabama case law is clear that Plaintiff, under the facts and circumstances presented in this case, cannot establish reasonable reliance on any alleged representations made by Colonial, regardless of when they are alleged to have occurred.[5] It is impossible, as a matter of law, for Plaintiff to establish that his reliance after January 11, 2005 was reasonable considering his

---

[5] The Alabama Supreme Court adopted the "reasonable reliance" standard over the previously applied "justifiable reliance" standard in its opinion in the case of Foremost Insurance Co. v. Parham, 693 So. 2d 409 (Ala. 1997). In doing so, the Court stated that:

> We conclude that the 'justifiable reliance' standard adopted in Hickox v. Stover, 551 So.2d 259 (Ala.1989), which eliminated the general duty on the part of the person to read the documents received in connection with a particular transaction (consumer or commercial), should be replaced with the 'reasonable reliance' standard most closely associated with Torres v. State Farm Fire and Casualty Co., 438 So.2d 757 (Ala. 1983). The 'reasonable reliance' standard is, in our view, a more practicable standard that will allow the fact finder greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties.

Foremost, 693 So. 2d. at 421.

testimony and the documents that were clearly in his possession long before the January 11, 2005 date.

The Alabama Supreme Court holds that summary judgment is appropriate "where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents." Potter v. First Real Estate Company, Inc., 844 So. 2d 540, 548 (Ala. 2002) (citing Foremost Ins. Co. v. Parham, 693 So. 2d 409 (Ala. 1997)). Therefore, in order to satisfy the second element of his claim, Plaintiff must establish that his reliance on any alleged representations made by Colonial was reasonable considering the circumstances surrounding the transaction in question.

In Baker v. Metropolitan Life Insurance Co., 907 So.2d 419 (Ala. 2005), the Alabama Supreme Court was faced with facts similar to the facts of this case. In Baker, the plaintiff had a high school education, could read and write, was 27 years old, and owned his own business at the time of the life insurance transaction and the alleged misrepresentation. Id. at 419. The plaintiff purchased a life insurance policy based upon the alleged representation by the agent that, after paying the premiums on the policy for eleven years, the policy would then become self-sufficient. Id. When the plaintiff received premium notices that required additional payments, he sued the insurer and the agent for fraud. Id. The trial court granted summary judgment in favor of the insurer, and the Alabama Supreme Court affirmed the judgment on the basis that the plaintiff had failed to produce substantial evidence that he had reasonably relied on the representations of the agent. Id. In affirming the summary judgment, the Court determined that the plaintiff had been presented a premium schedule and a document entitled "ACCELERATED PAYMENT PLAN" when he

23

purchased the policy which set out information about the policy which was contradictory to the alleged misrepresentations by the agent. Id. at 422.

In affirming the Baker summary judgment, the Court looked to the opinions in Liberty National Life Insurance Co. v. Ingram, 887 So. 2d 222 (Ala. 2004) and Alfa Life Insurance Co. v. Green, 881 So. 2d 987 (Ala. 2003). The Court noted that, in both of those cases, the plaintiffs had also been provided access to financial tables showing interest rates, guaranteed and projected cash values of the policies and premium schedules.[6] Id. at 421-422. Despite the complicated nature of the documents presented and the transaction at issue, the Court, in all three of the cases, upheld the summary judgments issued by the trial court based on the evidence that established that the plaintiff in each of the cases was provided documents that contained information that contradicted the alleged fraudulent statements made by the agent. The reliance by those plaintiffs in the life insurance transactions under those circumstances was not "reasonable" as a matter of law.

The facts of the instant case before this Court are even more compelling. Plaintiff is a high-school graduate and he attended one year of college, which is more education than any of the plaintiffs in any of the three cases cited above. Prior to setting up his own business in the Montgomery area, Plaintiff managed a restaurant in Chicago for five years. Plaintiff is the sole shareholder and officer in a restaurant business he created entitled "AlaThai, Inc." Plaintiff currently manages two restaurants in the Montgomery area and has done so for seven years. Plaintiff was 39 years old and had three children at the time of the transaction in question. Plaintiff had purchased and maintained insurance on his home and businesses for a number of years prior to this loss.

---

[6] The plaintiff in the Ingram case had only a seventh grade education and could read and write. One of the plaintiffs in the Green case had an eleventh grade education and the other was a high school graduate.

24

It is undisputed that Plaintiff was certainly as able, if not more able, to understand the nature

of the insurance transaction at issue in this case as any of the three plaintiffs in the above cited cases.

It is undisputed that Plaintiff received a copy of his 2003-2004 insurance policy. It is undisputed that

Plaintiff received a copy of the December 22, 2004 Offer to Reinstate, that he read the offer, that he

understood the terms, and that he understood that the offer expired on January 11, 2005. It is beyond

disputed that the one-page Offer to Reinstate was far simpler and more direct than the complicated

premium and cash value projection tables that accompanied the life insurance transactions in the

three cases cited above. This was a simple transaction, evidenced by a simple and clear document

that Plaintiff received and understood **prior** to any conversations with Colonial. In fact, Plaintiff

testified that it was because he understood the very document at issue that he even sought to speak

with Colonial. Plaintiff knew his policy would be non-renewed if the money was not paid by

January 11, 2006, and he gained that understanding from simply reading the document marked as

Exhibit 2 to his deposition. Plaintiff is an experienced businessman; he knew exactly what the

document said, and he acted accordingly. Even assuming that Plaintiff spoke to Colonial **after**

January 11, 2006, under Alabama law there was nothing that Colonial could have said or done at that

time that was contradictory to the document itself upon which Plaintiff could have "reasonably

relied." Under controlling Alabama law, Plaintiff cannot establish "reasonable reliance" on an

alleged misrepresentation in contradiction to the plain document that he received on December 22,

2004 and that he admits to reading.

The Alabama Supreme Court has carved out an exception in cases where the document at

issue is determined to be ambiguous. Under Alabama law, if a document is "ambiguous" or not

easily understood, the Court can determine that the document which contained information that

25

contradicted the representation, for statute of limitations tolling purposes, would not be sufficient

to have put the plaintiff on notice of the fraud to start the running of the statute of limitations. See

Potter v. First Real Estate Company, 844 So.2d 540 (Ala. 2002). Such is not the case here. The

document provided to Plaintiff could not be more clear. Plaintiff understood the document, the

effects of what it said, and the requirements that it placed on him to keep his insurance in place.

Plaintiff's fraud claims must fail, and Standard Fire is entitled to summary judgment on Plaintiff's

fraud claims as a matter of law.

## CONCLUSION

Based on the foregoing and the evidence submitted in support of Standard Fire's Motion for

Summary Judgment, Standard Fire respectfully requests that this Court grant it final summary

judgment as to all of the claims asserted by Plaintiff against Standard Fire and that this Court dismiss

said claims with prejudice.


Respectfully submitted,


 s/Joel S. Isenberg
Brenen G. Ely (0366-E54B)
Joel S. Isenberg (8855-N76J)
Attorneys for Defendant The Standard Fire Insurance
Company


OF COUNSEL:
SMITH & ELY, LLP
2000A SouthBridge Parkway
Suite 405
Birmingham, AL 35209
(205) 802-2214
(205) 879-4445 (FAX)

## CERTIFICATE OF SERVICE

I do hereby certify that a true and accurate copy of the foregoing has been served on all parties of record by:

|        |                          |
|--------|--------------------------|
| _____ | Hand-delivery to office  |
| _____ | Personally               |
| _____ | U. S. Mail               |
| _____ | Federal Express          |
| _____ | Facsimile                |
| __X__  | E-file                   |

on this the  19th   day of April, 2006.

s/ Joel S. Isenberg

OF COUNSEL

cc:
Christopher E. Sanspree
Beasley, Allen, Crown, Methvin
 Portis & Miles, P.C.
P. O. Box 4160
Montgomery, AL 36103
Gary E. Atchison
429 South Court Street
Montgomery, AL 36102