IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WEELAPAN KERN, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. |
| ) | |
| STANDARD FIRE INSURANCE ) | 2:05-CV-00698-DRB |
| COMPANY, ) | |
| ) | |
|     Defendant. ) | |

**THE STANDARD FIRE INSURANCE COMPANY'S REPLY TO PLAINTIFF'S STATEMENT AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Comes now Defendant The Standard Fire Insurance Company, incorrectly identified in Plaintiff Weelapan Kern's complaint as "Standard Fire Insurance Company," ("Standard Fire") and replies as follows to Plaintiff's Statement and Brief in Opposition to Defendant's Motion for Summary Judgment:[1]

**REPLY TO PLAINTIFF'S STATEMENT OF STANDARD OF REVIEW**

While Plaintiff's recitation of the summary judgment standard in his brief is correct as far as it goes, Plaintiff has not fully set forth the burden he carries in order to survive a motion for summary judgment.

---

[1] In addition, Standard Fire is filing the following pleadings in reply to Plaintiff's Statement and Brief in Opposition to Defendant's Motion for Summary Judgment: (1) "Motion to Strike the Expert Report of John Allen and Any Portions of Plaintiff's Brief in Opposition to Motion for Summary Judgment that Rely on Said Report"; and (2) "Motion to Strike Portions of Plaintiff Weelapan Kern's Affidavit And Those Portions of Plaintiff's Brief in Opposition to Defendant's Motion For Summary Judgment That Rely on Said Affidavit."

Once the movant (here, Standard Fire) carries its initial burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983).

The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).

Moreover, while all justifiable inferences are to be drawn in favor of the non-movant plaintiff, the nonmovant need not be given the benefit of every inference. Instead, he shall only be

2

given the benefit of every <u>reasonable</u> inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540, n.12 (11th Cir. 1988) (emphasis added).

### REPLY TO PLAINTIFF'S NARRATIVE SUMMARY OF UNDISPUTED FACTS

Plaintiff attempts to use the inadmissible legal conclusions of John Allen, his purported expert, to create questions of material fact to preclude the finding of summary judgment in favor of Standard Fire. However, these portions of Plaintiff's statement of facts are due to be struck, as set forth more fully in Standard Fire's "Motion to Strike the Expert Report of John Allen and Any Portions of Plaintiff's Brief in Opposition to Motion for Summary Judgment that Rely on Said Report" filed contemporaneously herewith. Moreover, Plaintiff attempts to create questions of fact by citing statements from his own affidavit that contradict his prior deposition testimony. As with the citations to Mr. Allen's report, these portions of Plaintiff's statement of facts are due to be struck, as set forth more fully in Standard Fire's "Motion to Strike Portions of Plaintiff Weelapan Kern's Affidavit And Those Portions of Plaintiff's Brief in Opposition to Defendant's Motion For Summary Judgment That Rely on Said Affidavit."

Even with Plaintiff's transparent attempts to create questions of fact where none exist, Standard Fire is due summary judgment on all of Plaintiff's claims because Plaintiff admits that the material facts in question are undisputed. Plaintiff admits:

- With respect to the automobile insurance policy issued to Plaintiff, "[t]he coverage period was from November 11, 2003 through November 11, 2004." (Plaintiff's Brief at p.2).

- "When time for renewing the insurance coverage approached, Mr. Kern did not pay an additional premium to renew his insurance at that time. (*Id.* at p. 3).

3

- "The [December 22, 2004] Offer to Reinstate offered to reinstate his policy as if there had been no interruption in coverage if Mr. Kern paid a minimum premium payment of $445.39 by January 11, 2005." (*Id.* at p.3).

- "Mr. Kern did not pay the minimum premium payment of $445.59 by January 11, 2005." (*Id.* at p.3).

Plaintiff admits that his policy expired on November 11, 2004. He admits he received an Offer to Reinstate from Standard Fire on or about December 22, 2004. He admits that the Offer to Reinstate clearly showed that the policy would only be reinstated if he paid the premium amount by the payment deadline of January 11, 2005. He admits that he did not pay any premium by the January 11, 2005 deadline.

Furthermore, it is undisputed for purposes of summary judgment that, as Plaintiff testified in his deposition, he telephoned his insurance agent, Colonial Insurance Agency and not Standard Fire, upon receipt of the Offer to Reinstate. (*See* Standard Fire's **Exhibit 1** at pp.46-47, 58; *see also* Standard Fire's Statement of Undisputed Fact at p. 5, n.1). Despite Plaintiff's attempt to create a question of fact with a contradictory statement in his subsequent affidavit (which is the subject of Standard Fire's Motion to Strike), it is further undisputed that Plaintiff does not know when he spoke with Colonial regarding the Offer to Reinstate -- he does not know whether it was prior to the January 11, 2005 deadline, or after the deadline. (*See, e.g.,* Standard Fire's **Exhibit 1** at pp. 108-110.).

## REPLY TO PLAINTIFF'S ARGUMENT

### A. BREACH OF CONTRACT

As Standard Fire set forth in its principal brief, Standard Fire is due summary judgment on Plaintiff's breach-of-contract claim because Plaintiff cannot carry his burden of proving the

4

existence of "a valid contract binding the parties" at the time of his automobile accident on February 5, 2005. *See Avis Rent a Car System. v. Heilman*, 876 So. 2d 1111, 1118 (Ala. 2003).

In the present case, Plaintiff received a copy of his 2003-2004 policy from Standard Fire and was aware that his policy expired by its own terms of November 11, 2004. Plaintiff received an Offer to Reinstate on December 22, 2004; was aware that the Offer to Reinstate expired on January 11, 2005; and admits that he did not accept the offer by the January 11, 2005 deadline. Now, Plaintiff argues that the act of sending an arbitrary $800.00 to Standard Fire sixteen days after the expiration of the reinstatement offer somehow creates a valid, binding contract with Standard Fire. Plaintiff's argument must fail, however, because all of the requirements for a valid contract do not exist.

In order for a valid contract to exist under Alabama law, the following requisite elements must be established: "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.'" *Memberworks, Inc. v. Yance*, 899 So. 2d 940, 942 (Ala. 2004) (quoting *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997) (quoting *Strength v. Alabama Dep't of Fin. Div. of Risk Mgmt.*, 622 So1 2d 1283, 1289 (Ala. 1993)); *see also In re: T&B Gen. Contracting, Inc.*, 833 F.2d 1455, 1459 (11th Cir. 1987) (citations omitted) (applying Florida law) ("A binding and enforceable contract requires mutual assent to certain and definite contractual terms. Without a meeting of the minds on all essential terms, no enforceable contract arises."). Even Plaintiff concedes that, in order to prove a contract exists, he must show "mutual assent to the terms essential to the formation of the contract." (Plaintiff's Brief at p. 5).

As Standard Fire previously set forth in its principal brief, it is undisputed that Standard Fire's Offer to Reinstate expired on its own terms on January 11, 2005. Plaintiff concedes that the

offer expired on January 11, 2005, and that he failed to accept the offer by that date. Accordingly, there can be no contract, because Standard Fire's offer expired prior to any acceptance by Plaintiff. It is hornbook contract law that a party who makes a contract has "the right to stipulate in his offer whatever conditions and terms he desires, provided such conditions are within the law." *L. M. Cater v. Haralson*, 362 So. 2d 242, 243 (Ala. Civ. App.), *cert. denied, Ex parte Carter*, 362 So. 2d 244 (Ala. 1978) (internal citations omitted). As a result, "the offeror may stipulate conditions as to the mode of acceptance and may withdraw his offer if the offeree fails to comply with the mode of acceptance which he (the offeror) has provided." *Carter*, 362 So. 2d at 243. In the present case, Standard Fire's offer to reinstate contained an expiration date, which Plaintiff admits he read and understood. There is no contract between Standard Fire and Plaintiff; therefore, there can be no breach.

It appears that Plaintiff now argues in his brief that his arbitrary act of sending $800.00 to Standard Fire was an "offer" and that Standard Fire "accepted" the offer by having the check electronically deposited, thus creating a contract.[2] Plaintiff's novel argument must fail, however, because, even assuming that Plaintiff made an "offer" and Standard Fire "accepted" it, there can be no insurance contract because there was no meeting of the minds with regard to the terms of the contract. In *Carlson v. Alabama Power Co.*, 628 So. 2d 913 (Ala. Civ. App. 1993), the Alabama Court of Civil Appeals quoted the Restatement (Second) of Contracts and held: "[E]ven though a

---

[2]As described more fully in Standard Fire's principal brief, it is Standard Fire's usual business practice upon receipt of a check to automatically deposited it upon receipt. (Standard Fire's **Exhibit 8**, Affidavit of Richard Finchum). At the time Standard Fire received Plaintiff's $800 check, Standard Fire automatically deposited it, but it was not applied to any account or any policy, because there was no policy to which it could apply. (*See* Standard Fire's **Exhibit 8.**)

6

manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain." *Carlson*, 628 So. 2d at 913 (quoting Restatement (Second) of Contracts § 33(1) (1981)). Continuing, the Court held that even if parties communicate, this communication cannot "form the basis of a binding contract because the meeting of the minds upon the essential terms of the contract had not occurred." *Carlson*, 628 So. 2d at 913 (citing *Coley v. Lang*, 339 So. 2d 70 (Ala. Civ. App. 1976).

Insurance contracts, like contracts in general, must meet all of the required elements in order to be enforceable. As the Alabama Supreme Court holds, "The requisite elements of an insurance policy, as in contracts, generally, include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Strength v. Alabama Dept. of Fin., Div. of Risk Mgmt.*, 622 So. 2d 1283, 1289 (Ala. 1993) (citing *Mercer v. Davis & Berryman Int'l, Inc.*, 834 F.2d 922 (11th Cir. 1987); *Gillilan v. Federated Guarantee Life Ins. Co.*, 447 So. 2d 668 (Ala. 1984)). This general principle has been codified into Alabama law. Ala. Code Section 27-14-11 (1998) mandates that, in order for an insurance contract in Alabama to be valid and enforceable:

(a) Every policy shall specify:

(1) The names of the parties to the contract;
(2) The subject of the insurance;
(3) The risks insured against:
(4) The time when the insurance thereunder takes effect and the period during which the insurance is to continue:
(5) The premium; and
(6) The conditions pertaining to the insurance.

Ala. Code § 27-14-11 (1998).[3]

---

[3] In *Strength*, the issue before the Court was whether the parties had agreed to the specific amount of premiums to be paid. The Court held that no contract existed where there was no written contract setting forth the essential element of premium amount:

In the instant case, there is no written insurance policy in effect. The Standard Fire policy expired on November 24, 2004. The Offer to Reinstate expired on January 11, 2005. What, then, would Plaintiff say are the essential elements of the insurance policy such that they meet the requirements of Alabama case law and Alabama statute? Plaintiff has failed to carry his burden of proving that any of the essential elements of an insurance contract exist. What is the subject of the insurance? What is the risk insured against? What is the time when the insurance takes effect, and what is the period during which the insurance is to continue? What is the premium? (Is it $800.00? What does that buy Plaintiff?) What are the conditions pertaining to the insurance? Plaintiff has not, and cannot, answer any of these questions, because the simple act of sending $800 to an insurance company cannot possibly create a valid and binding insurance contract.

The public policy implications of finding an insurance policy in effect under these circumstances would be staggering. What if Plaintiff had waited six months to send in the payment? Would that have been soon enough after the expiration of the Offer to Reinstate to create a valid insurance contract? If so, what would that policy period be? What would be the risk insured against? How about a year, or two?

It is undisputed that Plaintiff's policy expired on November 24, 2004. It is undisputed that Standard Fire's Offer to Reinstate expired on January 11, 2005. It is undisputed that Plaintiff failed

---

"The premium is of the very essence of a contract of insurance, and although the times and amount of payments made are not controlling on the question of whether a contract is one of insurance, in order to have a valid contract of insurance, the rate of premium must be agreed upon, expressly or impliedly." An instrument that fails to state the amount of, and duties of the parties with regard to, the premium fails in an essential element, and therefore, cannot constitute an enforceable contract.

*Strength*, 622 So. 2d at 1289 (internal citation omitted).

to pay the renewal premium by the January 11, 2005. Despite Plaintiff's protestations to the contrary and novel arguments, there is no contract and there is no breach. Standard Fire is due summary judgment on Plaintiff's breach-of-contract claim.

## B. BAD FAITH CLAIMS.

Standard Fire is entitled to summary judgment on Plaintiff's bad faith claims for three reasons. First, bad faith liability is limited under Alabama law to "those cases in which the insured is entitled to benefits under the policy." *Slade v. State Farm Fire and Casualty Co.*, 747 So.2d 293, 319 (Ala. 1999). As set forth in Standard Fire's principal brief and in this reply, it is undisputed that no contract of insurance exists between Plaintiff and Standard Fire and that Standard Fire is entitled to summary judgment on Plaintiff's breach-of-contract claims. Accordingly, under controlling Alabama law, the Plaintiff's bad faith claims necessarily must fail as well. *Id.*

Second, even if this was not the case, Plaintiff asserts in his brief that there is substantial evidence warranting a denial of Standard Fire's motion for summary judgment on the breach of contract claim. In essence, Plaintiff has argued that there is a genuine issue of material fact on the contract claim. However, by making this argument, Plaintiff has hoist himself on his own petard. The very nature of Plaintiff's argument on the breach-of-contract claim provides substantial basis for this Court to determine that the bad faith claims must fail under the "directed verdict" standard for intentional denial bad faith claims.

While Plaintiff alleges both "normal" and "abnormal" bad faith claims in his complaint and references both in his brief, he presents arguments only with regard to the "normal" bad faith claim, i.e., whether Standard Fire's reason for the denial of plaintiff's claim was debatable. Plaintiff submitted no evidence and no argument that would support an "abnormal" bad faith claim; therefore, Standard Fire is entitled to summary judgment on the "abnormal" bad faith allegations in the complaint based on the facts, arguments and legal authority set forth in its previously submitted "Statement of Undisputed Facts and Memorandum Brief in Support of Motion for Summary Judgment."

As for Plaintiff's remaining bad faith claims, they are of the "normal" variety; i.e., claims for intentional denial of the claim without a legitimate, arguable basis. Alabama law provides that "normal" bad faith claims such as this one are subject to the "directed verdict" standard Plaintiff must establish that the reason for the denial was not "debatable" and that there is no issue of material fact on the contract claim in order to submit the bad faith denial claim to the jury. *See Slade* 747 So. 2d at, 304-305 (when a claim is not fairly debatable, refusal to pay will be bad faith and, under appropriate facts, give rise to an action for tortious refusal to honor the claim).[4] However, when a

---

[4]The Alabama Supreme Court has stated that:

> In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.

*Nat'l Savings Life Ins. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982).

claim is "fairly debatable, the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Id.*

In this case, Plaintiff asserts that "[t]he evidence set forth above indicates that Standard Fire/Travelers created its own debatable reason to deny Mr. Kern's claim for benefits . . . ." (Plaintiff's brief at p. 7). The Alabama Supreme Court was faced with the same argument in *Bush v. Ford Life Insurance Co.*, 682 So. 2d 46 (Ala. 1996), and held that a plaintiff cannot survive a motion for summary judgment by arguing that the insurer improperly created a debatable reason for its decision by implementing one of its own procedures.

In *Bush*, the insurer reserved the right to investigate the insured's medical condition after the insured's death if the insured died within a year of the policy's effective date. *Bush*, 682 So. 2d at 48. The trial court granted summary judgment in favor of the insurer on the plaintiff's bad faith denial claim, and the plaintiff appealed the ruling. On appeal, the plaintiff argued that the insurer through the utilization of the post-death review procedure " establishes for itself an automatic debatable reason for denying the bad faith claim by creating a fact issue on the breach of contract claim." *Id.* In affirming the summary judgment in favor of the insurer on the plaintiff's bad-faith claim, the Alabama Supreme Court held "[o]rdinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury. " *Id.* at 305.

Plaintiff makes the same argument here as relates to Standard Fire's non-renewal based on the provisions set forth in the Offer to Reinstate. Like the defendant insurer in *Bush*, Standard Fire provided the insured with written notice of what would happen if the terms of its Offer of Reinstatement were not satisfied by the Plaintiff. It is undisputed that Plaintiff understood the terms

of the offer and simply did not comply with them. It is undisputed that Standard Fire did exactly what it said it would do, which was not reinstate the policy if the terms in the offer were not satisfied. Like the plaintiff in *Bush*, Plaintiff here has made a factually unsupported argument that the non-renewal was a self-created "debatable" reason upon which to base the denial of the claim. The Alabama Supreme Court has specifically said that such an argument under facts such as these is legally insufficient and will not defeat a motion for summary judgment on a bad faith denial claim.

Finally, Standard Fire maintains that it is entitled to summary judgment on the breach of contract claims; however, should this Court agree with Plaintiff that there is indeed substantial evidence supporting and creating an issue of material fact on the breach of contract claim, then under Alabama law, the bad faith claim must necessarily fail. By arguing that there are material issues of fact for the trier of fact to consider on the breach of contract claim, Plaintiff cannot meet the directed-verdict standard for "normal" bad-faith claims. Based on these arguments, and the arguments previously submitted by Standard Fire in its principal brief, Standard Fire is entitled to summary judgment on Plaintiff's bad-faith claims.

### C.  FRAUD CLAIMS.

Standard Fire is also entitled to summary judgment as a matter of law on Plaintiff's fraud claims. As a preliminary matter, in footnote 2, Plaintiff attempts to address Standard Fire's argument that the dismissal of the agent in conjunction with this Court's Scheduling Order precludes Plaintiff's fraud claims from proceeding against Standard Fire. Plaintiff, however, makes no substantive arguments in response. Rather, Plaintiff contends that Standard Fire's argument in this regard was not supported by any legal authority. Contrary to Plaintiff's assertion, Standard Fire's argument in its principal brief was fully supported with legal authority and is meritorious. *See*

Standard Fire's principal brief at pp. 16-17 (citing *Barlow v. Liberty Nat'l Life Ins. Co., 708 So.2d 168 (Ala. Civ. App. 1997); Larry Terry Contractors. Inc. v. Bogle, 404 So.2d 613 (Ala. 1981); Schurman v. The Motor Vessel "Betty KV", 798 F.2d 442 (11th Cir. 1986)).* Plaintiff has asserted no opposition to the argument, in terms of either evidence or legal authority; therefore, Standard Fire is entitled to summary judgment on Plaintiff's fraud claims.

Second, Plaintiff attempts to create an issue of material fact by submitting his own affidavit testimony, which is in <u>direct</u> contradiction to Plaintiff's previous deposition testimony. Standard Fire has already addressed this issue in "Standard Fire's Motion to Strike Portions of Plaintiff Weelapan Kern's Affidavit and Those Portions of Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment That Rely on Said Affidavit," and incorporates those arguments herein by reference. As set forth more fully in Standard Fire's principal brief, it is undisputed that, based on Plaintiff's own deposition testimony, there is no genuine issue of material fact, and Standard Fire is entitled to summary judgment on Plaintiff's fraud claims. No amount of *ex post facto* wording in a subsequent, contradictory affidavit can change this result.

Nevertheless, even if this Court determines that Plaintiff's contradictory affidavit can be considered, Plaintiff's argument remains fatally flawed as relates to the fraud claims. Essentially, Plaintiff argues that his reliance was "reasonable" under Alabama law because:

> [n]owhere within the Offer of Reinstatement does it state that an additional premium payment of $800.00 would not reinstate Mr. Kern's policy of insurance. Nowhere in the Offer of Reinstatement does it state that if the minimum premium of $445.49 was not received by the deadline of 1/11/05 that Mr. Kern's policy could not be reinstated later by making additional premium payment. In fact, the Offer of Reinstatement is silent as to these issues and does not in any way show a contradiction between what was represented to Mr. Kern (make a premium payment of $800.00 and your policy will be reinstated as if there had been no interruption in coverage).

(Plaintiff's Brief at p. 10).

13

Contrary to Plaintiff's argument, the Offer of Reinstatement is clear and, to the extent Plaintiff is to be believed that Colonial told him to send $800.00 after January 11, 2005, Colonial's statement would be a contradiction to the written words on the page. Under Alabama law, Plaintiff cannot have "reasonably relied" on any statements after January 11 that contradicted the written words. (*See* Standard Fire's principal brief at pp. 22-26). It is undisputed that Mr. Kern received these terms, understood them, and refused to abide by them; therefore, any reliance on representations after the expiration of the terms cannot be reasonable under Alabama law.

Plaintiff argues the Offer to Reinstate's silence as to the specific scenario under which Plaintiff send $800 to Standard Fire somehow makes his reliance reasonable. It is undisputed, however, that the document itself is absolutely clear that Mr. Kern had to pay $445.49 by January 11, 2005 for the policy to be reinstated. Any representation that $800 payable at any time after the deadline was in direct contradiction to the terms set forth in the document. Under Alabama law, Plaintiff cannot establish "reasonable reliance" on an alleged misrepresentation in contradiction to the plain document he received on December 22, 2004, and that he admits to have read.

If Plaintiff's argument is followed, a plaintiff would always be able to show reasonable reliance as long as document does not set out the particular scenario to which a plaintiff testifies, regardless of how far fetched. As was set forth in the Motion for Summary Judgment and Brief, this is not the law in Alabama, and Standard Fire is entitled to summary judgment on the fraud claims.

## CONCLUSION

Based on the foregoing and the evidence submitted in support of Standard Fire's Motion for Summary Judgment, Standard Fire respectfully requests that this Court grant it final summary

judgment as to all of the claims asserted by Plaintiff against Standard Fire and that this Court dismiss said claims with prejudice.

s/Joel S. Isenberg
Brenen G. Ely, 0366-E54B
Joel S. Isenberg, 8855-N76J
Attorneys for The Standard Fire Insurance Company

OF COUNSEL:
SMITH & ELY, LLP
2000A SouthBridge Parkway
Suite 405
Birmingham, Alabama 35209
Phone: (205) 802-2214
Fax: (205) 879-4445

## CERTIFICATE OF SERVICE

I do hereby certify that a true and accurate copy of the foregoing has been served on all parties of record by:

|     |                   |
| --- | ----------------- |
| ___ | Hand Delivery     |
| ___ | U. S. Mail        |
| ___ | Overnight Delivery |
| ___ | Facsimile         |
|  x  | E-File            |

on this the 30th day of May, 2006.

s/Joel S. Isenberg
OF COUNSEL

cc:

Jere L. Beasley
W. Daniel Miles
Christopher E. Sanspree
Beasley, Allen, Crown, Methvin
 Portis & Miles, P.C.
P. O. Box 4160
Montgomery, AL 36103

Gary E. Atchison
429 South Court Street
Montgomery, AL 36102