# John H. Allen, AIC, CFE
## Consultant

Phone (205) 592-4507

Fax (205) 595-7832



March 2, 2006

Christopher E. Sanspree, Esquire
P O Box 4160
Montgomery, Alabama 36103 - 4160

**Re: Weelapan Kern vs. Standard Fire Ins Co. et al.**

Dear Mr. Sanspree:

    I have reviewed the documents you provided to me and listed in Exhibit "A". The opinions expressed are not legal opinions and I am not an attorney. The opinions expressed are from a claims perspective in accordance with Industry Standards.

    Attached as Exhibit "B" is a copy of my CV, which reflects my training, education and experience in the insurance field.

    I have been accepted as an expert witness on insurance claims in the State and Federal Courts of Alabama and in State Court in Mississippi.

    The opinions expressed are based on the documents reviewed to date. Upon review of any additional documents that merit a supplementation of this report I will make such additions and/or changes to amend my conclusions and opinions as warranted.

    There was no policy of coverage sent to Mr. Kern so it is unknown as to all the auto coverages available for his vehicle and third parties. He was acknowledged to have coverage under policy # 975499318-101-1. The policy in question was a renewal of a preexisting policy for the period of 11-11-03 to 11-11-04. The renewal in question was for the period of 11-11-04 to 11-11-05. Mr. Kern had an accident 02-05-05. Mr. Kern promptly reported the accident.

**EXHIBIT G**

Post Office Box 531166    Mountain Brook, Alabama 35253

Page 2:
Kern.

      Prior to the accident, 12-22-04, Mr. Kern had received an offer to reinstate his auto policy for the period of 11-11-04 to 11-11-05 with a minimum due of $ 445.49. This would reinstate the policy without interruption back to 11-11-04.
On January 27, 2005, Mr. Kern made a payment of $ 800.00, in acceptance of the offer to reinstate, the full premium was $ 1,640.00 plus $ 10.00 in late fees. The $800 amount would pay the premiums for 6 months or from 11-11-04 to 05-11-05, and was approximately two times the minimum amount due for reinstatement. The $800.00 check and the reinstatement notice was sent to Travelers. Travelers accepted the reinstatement notice and did not return the check - uncashed and advise Mr. Kern there could be no reinstatement of this policy as the check was received after 01-11-05. Travelers readily accepted the $ 800.00 check and then negotiated the check that shows a check cancellation date of 02-04-05, before the date of loss. The acceptance of the premium after the due date of January 11, 2005, would indicate that Travelers was waiving the due date and accepting the money in consideration of reinstating the policy for six months. Mr Kern had the option to pay the full year premium or a minimum amount. Mr. Kern paid 6 months of premium with the 01-27-05 payment.

      Five days after the loss Travelers sent their letter of 02-10-05 (KERN 0004) directed to Mr. Kern concerning his 02-05-05 accident. The letter stated that they had completed their investigation on the loss. They concluded that his policy was canceled 11-11-04, for non-payment of premium. This was written 6 days after Travelers had cashed the $ 800.00 check which reinstated the policy and paid premium for 6 months or up until 05-11-05. There was not Reservation of Rights nor a Non- Waiver Agreement executed due to a question of coverage. Since there was a question raised on the issue of when the payment was made Industry Standards would call for an investigation on when the premium was accepted and for what period of time. Travelers failure to investigate was a deviation from Industry Standards. Industry Standards would hold Travelers to the use of information in the file on 02-10-05, and used in the denial.

Page 3:
Kern

On 03-21-05 Travelers contacted Mr. Kern's attorney and acknowledged his representation in the case. It states:

**"I called your office today, March 31, 2005 and left you a voice message stating that the claim has been referred to coverage council Marmur and Associates for further coverage investigation. Your office will be contacted in the near future after further coverage investigation is done."**

Here Travelers is deviating from Industry Standards by seeking a coverage opinion " AFTER THE FACT" as the claim was denied 02-10-05. Travelers was looking to create a reason and bolster their decision with a coverage opinion that was after the denial. Travelers admits they are continuing to investigate after the denial to support their decision that was made without any coverage opinion from Marmur and Associates and /or other information. Travelers recognized there was a coverage question and never advised Mr. Kern of any policy conditions applicable in a deviation from Industry Standards. Travelers failure to notify Mr. Kern and act on notice of a known coverage issues before the denial would constitute a waiving of issues. He did not get a policy so Travelers would not be able to invoke exclusions on Mr. Kern when he never had benefit of knowing the policy terms and conditions.

On 02-10-05, Colonial Insurance, Agent of Mr. Kern, advised Mr. Kern that Travelers notified them about his policy. They show the policy was canceled on 01-25-05, back to 11-11-04 for nonpayment. They state that Travelers received the check on 02-07-05 and that since it was posted on 02-07-05, after the cancellation date. The basis of denial has changed with the agent advising that the cancellation is from the failure to pay by 01-11-05 with a retro-cancellation to 11-11-04. The date posted could be any date and the key date is the date the check was negotiated and not the posted date. Travelers is using the posted date to make it look like the policy could only be effective after the date of loss and not before. This policy was paid up before the loss and Travelers knew this and created their own reason to deny the claim. The payment was accepted for reinstating the policy.

This is a misrepresentation as Travelers had the check before this date of 02-07-05, and before the accident date, 02-05-05. The check was canceled 02-04-05, so Travelers had the check in it's possession prior to the date cashed.

Page 4:
Kern

Travelers did not refuse the premium until it learned of the accident. But for the accident the policy would have been reinstated. When Travelers received the $ 800.00 check they had the option to accept the payment and provide appropriate coverage or they could reject the check and send it directly back to Mr. Kern. That was not done. Travelers accepted the premium payment, deposited to money, learned of the loss and then decided to refund the premium in an intentional act to avoid providing Mr. Kern coverage.

The acceptance of the premium bound Travelers to provide coverage to Mr. Kern. Travelers knew there were coverage issues but elected not address any of them with Mr. Kern. Travelers own correspondence shows that the claim was denied prematurely and without a good faith investigation. Travelers was seeking coverage opinions after the fact and to try to support the initial denial. There is no information seen and showing that Travelers advised Mr. Kern's attorney about the coverage issues investigated in March of 2005, after they referred out for a coverage opinion - almost two months after the denial.

Travelers deviated from Industry Standards by not sending the insured a policy of coverage. Travelers deviated from Industry Standards by their investigating the coverage after the denial. The file was not subjected to a cognitive review to evaluate the claim. There was coverage at issue and there was no good faith investigation. Industry Standards would call for the company to reserve it's rights on the coverage issues, advise the insured of it's findings at the completion of it's investigation. Here Travelers denied the claim without a reasonable, legitimate, arguable or debatable reason as the premium was clearly accepted and negotiated before the loss which would reinstate the policy for six months. Travelers intentionally misrepresented the facts as they relate to the date the check was deposited in an effort to show the check was not received or deposited until after the loss. A Good Faith investigation would have shown the true deposit date was before the loss and that Travelers accepted the premium in reinstatement of the policy. Travelers only attempted to refund the premium to avoid providing Mr. Kern the coverage rightfully due under the policy. Mr. Kern was due full coverage under the policy to the extent of the limits he was paying for under his renewal policy.

If you have any questions - just call.

Sincerely,

*John H Allen*
John H. Allen

# EXHIBIT "A"

1. Bates Stamped Documents KERN 0001 to KERN 0072

2. Plaintiff's Response to Defendants Interrogatories.

# CURRICULUM VITAE



JOHN H. ALLEN, A I C, C F E
P. O. BOX 531166
MOUNTAIN BROOK, ALABAMA 35253
OFFICE (205) 592-4507
FAX (205) 595-7832



EDUCATION:

University of Alabama – B. S. – Commerce and Business Administration – 1971
Aetna Advanced Claim School – 1984
Insurance Institute of America – Associate in Claims – 1991
Multiple Seminars conducted in Proper Claims Handling
Society of Certified Insurance Counselors – Agency Management Institute – 1994
Association of Certified Fraud Examiners – Certified Fraud Examiner – 1996

EMPLOYMENT:

### John H. Allen Consulting – January 1993 to Present

Consultant and expert witness in insurance claims coverage and claims handling involving commercial lines, bonds, personal lines, health, life, workers compensation, and disability policies for Bad Faith, Fraud and Tort of Outrage in claims handling.

Stockholder audits of carrier claims practices and sales.

Investigations of claims and accidents involving, but not limited to: trucks, autos, general liability, dram shop, commercial liability, personal liability, professional liability, workers compensation, real and personal property, products liability, uninsured/underinsured motorist, fire loss, accidental shootings, and witness locations. Disability Coverage, Indemnity Coverage, Agent Fraud, Agent E&O. Carrier liabilities to other carriers in policy coverage. Pattern and Practice. Group Policies. Life Insurance Fraud.

Service of Process.

### Aetna Casualty and Surety – July 1983 to December 1992

Responsible for the complete development and disposition of complex and unique claims / catastrophic cases / lawsuits within Alabama. Technical advisor on technical claim related matters. Counsel and assisted in training of claims personnel.
Coordinator of departments technical training.
Reclamation, Fidelity, and Surety Bonds. All hazardous Waste claims for the state. Commercial auto, trucking, property, medical malpractice claims. Extra-contractual suits for state involving bad faith, fraud and tort of outrage. Workmen's compensation claims. Large account consultations of pending claims.

-2-

Stonewall/Dixie Insurance Companies 1979 - 1983

Claims Manager – Personal lines. Supervised Auto and Property Unit, Subrogation Unit of handling of claims in 26 states.

Responsible for training and supervision of claims examiners for each unit, granting of authority for settlement of claims in each unit. Coverage approval for acceptance and denial of claim.

Coordination of defense for cases.

Claims Examiner – Liquor Liability Unit. Handling of investigations and directing independent investigations on Dram Shop cases in Michigan and Minnesota. Evaluated and negotiated settlements of claims, coordination of defense.

Claims Examiner – Auto Unit

National Producers Life Insurance Company 1978 – 1979

Consultant for litigation and accounting systems.

Alabama Power Company 1971 – 1978

Resident Claims Agent – Responsible for investigation, evaluation and settlement or defense of product liability, general liability, auto, truck, and electrical contact claims.

Workmen's compensation claims, employee dishonesty investigations, and power theft investigation.