IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WEELAPAN KERN,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        2:05-CV-00698-DRB
                                        )        wo
STANDARD FIRE INSURANCE                 )
COMPANY,                                )
                                        )
        Defendant.                      )

MEMORANDUM OPINION AND ORDER ON MOTION

This diversity action by Weelapan Kern ("Kern") arises from non-payment by Standard Fire

Insurance Company ("Standard Fire") of vehicular damage claims resulting from an automobile

accident on February 5, 2005.  Initially sounding only in breach of contract (Count I) and bad faith

failure to investigate and pay the claim (Count II), the complaint was amended to add another

defendant, Colonial Insurance Company ("Colonial"), and to assert claims for Fraudulent

Misrepresentation (Count III) and Negligent and/or Wanton Misrepresentation (Count IV).

Alabama law governs all asserted claims.

On January 31, 2006, the court granted Kern's *Motion to Dismiss* all claims asserted against

Defendant Colonial Insurance Company *Without Prejudice* (Doc. 28).  *Standard Fire's Motion for*

*Summary Judgment* (Doc. 31, April 19, 2006 ) seeks judgment on all counts based on "undisputed

facts and controlling Alabama law."  After careful consideration of all submissions [1] against the

---

[1]Standard Fire's evidentiary submission (Doc. 32) and supporting brief (*"Def.'s Br."*-Doc.
33); Kern's *Statement and Brief in Opposition*, filed with evidentiary exhibits (*"Pl.'s Br."*-,Doc. 36);
Standard Fire's *Reply* brief (*"Def.'s Reply Br."* - Doc. 37). By Order filed July 7, 2006, the court
granted Standard Fire's *Motion to Strike the Expert Report of John Allen and Portions of Plaintiff's*
(continued...)

backdrop of controlling Alabama law, the court concludes that the requested summary judgment is warranted.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of "the pleadings and evidentiary record" which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing the non-moving party has failed to present sufficient evidence to establish an essential element of the non-moving party's claim. *Celotex* at 331.

In response to a properly supported motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits, or as otherwise provided .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court's role is neither to weigh the evidence nor to find the facts; instead, it is "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved

---

[1](...continued)
*Brief in Opposition to Motion for Summary Judgment that Rely on said Report and Exhibits* (Kern's Ex. G).

only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986).  Substantive law will identify those facts which are material on motions for summary judgment.  *Id. at* 258.

The court must accept the evidence of the non-moving party as true, resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor.   *Hunt v. Cromartie,* 526 U.S. 541, 550-55 (1999);  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If more than one reasonable inference can be drawn, and that inference creates a genuine issue of material fact, summary judgment is not warranted because the trier of fact is entitled to decide which inference to believe.  *Hunt v. Cromartie*, 526 U.S. at 552;  *Patterson & Wilder Const. Co., Inc. v. U.S.*, 226 F.3d 1269, 1273 (11th Cir. 2000).

## II.   FACTUAL BACKGROUND

The foundational facts underlying this lawsuit – necessarily viewed in the light most favorable to Kern – are undisputed in significant part. Standard Fire[2] issued to Kern an automobile insurance policy on his Mitsubishi Montero with an effective date of November 11, 2003, and an expiration date of November 11, 2004;  both his insurance identification card and policy  specified the same coverage dates.  An experienced restaurant manager/owner, Kern purchased the policy through Colonial, an authorized agent for Standard Fire.  Kern did not pay an additional premium to renew

---

[2]Kern's submissions identify the insurer as Standard Fire/Travelers.  The records reflect that Standard Fire is a wholly owned subsidiary of St. Paul Travelers Companies (*Def.'s Br.* at n. 2) as well as an affiliated insurer with Travelers (Finchum Aff. ¶1, *Pl.'s Ex.* F ).

the policy.

Kern received from Standard Fire an *Offer to Reinstate*, dated December 22, 2004, which

provided, in pertinent part:

| Previous balance | | | $1,640.00 |
|---|---|---|---|
| Late Charge | | | +10.00 |
| | | Minimum | Unpaid |
| Policy Information | Policy Period | Payment | Balance |
| Automobile 975499318 101 1 | Lapsed-11/11/04 to 11/11/05 | $445.49 | $1,650.00, |

Your policy expired on 11/11/04 at the time stated in your policy because we did not receive
the minimum payment required to continue your coverage. However, we will be happy to
reinstate the policy without interruption.

To reinstate your policy, we must receive at least the "MINIMUM AMOUNT DUE" shown
above by 01/11/05. If we receive your payment by that date, we will send a notice of
reinstatement to you.

If you pay the "Total Account Balance" there will be no service charge.

Please contact your agent or insurance representative immediately if you have any questions.[3]

Although Kern read and understood the *Offer*, he did not make the specified timely payment

to reinstate coverage. He did contact his Colonial agent and, pursuant to instructions that he send

money for reinstatement, he sent to Standard Fire an $800.00 check dated January 27, 2005.[4] When

Standard Fire received Kern's payment on Friday, February 4, 2005, "the check was electronically

scanned and automatically deposited" on the same day.[5] A computer system check on February 7 for

---

[3]*Def.'s Ex.* 5.

[4]On this summary judgment evaluation, the court accepts Kern's testimony about this contact
(*Kern Dep.* at 46-48 , *Pl.'s Ex.* A) notwithstanding the testimony of Cheryl Azar, Colonial's
Personal Lines Manager, that her "full and complete search of Colonial's computer system . . . found
no evidence of any telephone conversation with Mr. Kern regarding his insurance coverage after the
placement of his insurance in November of 2003."(*Def.'s Ex.* 6).

[5]*Def.'s Ex.* 7.

outstanding premiums disclosed Kern's inactive policy, and Standard Fire notified Kern[6] and refunded his $800.00 payment on February 17, 2005. In the interim period, an automobile accident on February 5, 2006, caused the vehicular damages which resulted in Kern's denied claims under his Standard Fire policy. Kern contacted Colonial about the accident on February 7, 2005, and Colonial notified Standard Fire on February 10, 2005.

## III.  DISCUSSION

### A.  Breach of Contract Claim

Alabama law allows a plaintiff to establish a breach of contract claim by showing "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999) (quoting *Southern Medical Health Systems, Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995)). Kern's contractual claim cannot rest on either the insurance policy which issued on November 11, 2003, or any reinstatement policy issued by January 11, 2005, because Kern admits that the original policy expired on November 11, 2004, and that he neglected to purchase a reinstatement policy within the January 11, 2005 deadline specified in Standard Fire's *Offer to*

---

[6]In a letter dated February 10, 2005, a Colonial accounts manager advised, in part:

> *We have been notified by Travelers Insurance Company that your auto policy was cancelled on 1-25-05 back to the effective date of your renewal on 11-11-04 for nonpayment. Travelers did receive your check for $800.00 on 2-7-05, however they are returning your premium payment since it was posted on 2-7-05, well after the cancellation date.*

(*Def.'s Ex.* 12).

5

*Reinstate* dated December 22, 2004. Thus, he is bound first to establish the existence of a binding contract with Standard Farm as of the February 5, 2005 accident giving rise to his claim for benefits; if he cannot establish a contract, he cannot maintain an action for its breach.

Kern's theory, simply stated, is that his transmission of $800.00 on January 27, 2005 – pursuant to instructions from Colonial that the policy would be reinstated if he did so – and Standard Fire's receipt and deposit of that sum on February 4 served to create a contractual relationship. Notwithstanding the absence of any proof for the alleged instructions, Standard Fire assumes the accuracy of Kern's report, as it must on this summary judgment evaluation, and maintains nonetheless that the parties failed to reach the "meeting of the minds" necessary for any new contract; moreover, Standard Fire argues that it never credited the payment to any active policy, but instead, promptly notified Kern to anticipate a refund once a systems check disclosed his lapsed policy.

Analysis favors Standard Fire's contention. The parties do not disagree on the basic elements of a contract under Alabama law: (1) an offer, (2) acceptance, (3) consideration, and (4) mutual assent to the essential terms of the agreement. *Pinyan v. Community Bank*, 644 So. 2d 919, 922 (Ala. 1994); *Strength v. Alabama Dep't of Finance*, 622 So. 2d 1283 (Ala. 1993) (requisite elements for insurance policy are same as those for a contract). Kern's submissions can be construed reasonably to argue that the reported instructions from Colonial constituted an "offer" and his $800 transmission an acceptance *or* that his $800 payment represented his "offer" and Standard Fire's acceptance and deposit constituted an acceptance. In either case, he advances his argument with a proposition which is unsupported by fact or law: "It is also undisputed that once Defendant Standard Fire/Travelers accepted and deposited Mr. Kern's $800.00 premium payment, it was bound to reinstate Mr. Kern's

insurance policy and provide insurance coverage for any subsequent loss."[7] Indeed, the only pertinent

evidence admitted at this juncture supports just the opposite proposition – that the insurer did not

accept the $800.00 payment as a payment to reinstate the lapsed policy or to create another policy:

> Mr. Kern's check in the amount of $800 was received in the mail and was
> automatically deposited into a Travelers bank account on Friday, February 4, 2005 as
> is standard business practice for Standard Fire upon receipt of all premium checks. As
> is the usual business practice, it was not until Monday, February 7, 2005, the next
> business day after the deposit of the check, that the Standard Fire computer system
> was able to search the Standard Fire accounts to determine whether there was
> outstanding premium on the plaintiff's policy to which the check could be credited.
> It was determined, at that time, that the offer to reinstate the policy had expired and
> that it was no longer in effect. Therefore, since there was no policy to which the
> check could be applied, Standard Fire began the refund procedure at that time and
> issued a refund check to the plaintiff on February 17, 2005.[8]

Construing the evidence most favorably to Kern, the court will assume that Colonial, acting

as Standard Fire's agent, offered to contract with Kern in consideration for his $800.00 check, and

Kern's remittance constituted his acceptance and the stipulated consideration; a valid contract would

still require proof of the parties' assent to specific terms, and such proof is lacking on this record. In

Kern's view, the terms would be those specified in his "insurance policy reinstated as if there had been

no interruption in coverage." As the insurer, Standard Fire had already communicated to Kern, on

December 22, 2004, an *offer* to reinstate that policy but to make the insurer duty-bound "to reinstate

this policy without interruption", Kern received clear notice of both the form and time of his

acceptance: "To reinstate your policy, we must receive at least the "MINIMUM AMOUNT DUE"

---

[7]*Pl.'s Br.* at 5. The only support proffered for this assertion is an expert report which has
been ruled inadmissible evidence. (*Order* entered July 7, 2006, Doc. 51).

[8]*Affidavit of Richard Finchum*, Quality Audit Specialist for The Travelers Indemnity
Community ("*Finchum Aff*") ¶ 2, *Def.'s Ex. 8.*

shown above [$445.49] by 01/11/05.  If we receive your payment by that date, we will send a notice of reinstatement to you."[9]

Kern's admitted noncompliance with the stipulated deadline for reinstatement means that there cannot be a disputed issue of material fact on whether his original policy had been reinstated so that all of its terms and provisions continued in full force and effect on the February 5, 2005 date of the accident.   Among the "General Provisions" in the original policy, commencing on the same page as "Duties after an Accident or Loss",  is the following notice:

> **Automatic Termination**.  If we offer to continue and you or your representative do not accept, this policy will automatically terminate without notice of termination at the end of the current policy period.  Failure to pay the required continuation premium when due shall mean that you have not accepted our offer.[10]

Accordingly, in order to survive summary judgment on his breach of contract claim, Kern must produce substantial evidence of a newly created contract in effect  on February 5, 2005, because the existence of "a valid contract binding the parties in the action" is the foundational element of a breach of contract claim.   Even if the evidence is construed in Kern's favor with respect to the offer, acceptance, and consideration components of a contract, the court cannot find in Kern's  affidavit or deposition testimony sufficient probative  facts which could enable a reasonable trier of fact to find the fourth essential element – *mutual assent  to the essential terms of the agreement*.[11]   Consequently,

---

[9]*Def.'s Ex.* 5.

[10]*Def.'s Ex.* 3, PL-6000 3-87, p. 13 of 13 (Doc. 32-4 at 31).

[11]The only "terms of the agreement" related during Kern's deposition testimony were those stated in the December 22, 2004 offer to reinstate ("I called Colonial and they said to send money and I sent them the check. . . . Without interruption and my policy will be reinstated.. . . Just send $800.00 in and my policy will be reinstated." (*Kern Dep.* at 46, 50),  but his recollection related then
(continued...)

Standard Fire is entitled to summary judgment on Kern's contract claim. See *Celotex,* 477 U.S. 317, 324-326 (if defendant movant draws attention to absence of support for essential element of nonmovant's claim, plaintiff is by definition precluded from prevailing at trial and summary judgment may be granted, unless in response plaintiff nonmovant sets forth facts which could enable reasonable trier of fact to conclude that essential element is proven); *Morisky v. Broward County*, 80 F.3d 445, 448-449 (11th Cir. 1996) (summary judgment granted against Americans with Disabilities Act plaintiff who failed to submit evidence that defendant was aware of plaintiff's disability; defendant's adverse action could not therefore have resulted because of disability).

### B.    Bad Faith Claim

Count II's "bad faith" cause of action is stated simply:

> At all material times herein, Defendant Standard was under a duty to use good faith in handling Plaintiff's claim. (¶13). Defendant Standard has intentionally, and in bad-faith, failed and/or refused to fully investigate and/or pay the benefits due under the aforesaid policy of insurance as set forth above. (¶ 14). As a proximate consequence, Plaintiff was injured and damaged as set forth in paragraph 11 above. (¶ 15).

As both parties acknowledge in their briefs, Alabama law recognizes two distinct types of bad faith claims in the context of an insurer's refusal to pay a claim: "normal" bad faith or "abnormal" bad faith. *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 306 (Ala. 1999). To sustain a

---

[11](...continued)
to a conversation "right after [he] received the notice." Because Kern's summary judgment opposition rests on his alleged communication with a Colonial agent about two weeks *after* the January 11, 2005 deadline specified in the December notice, the court scrutinized his testimony in vain for any facts concerning agreed-upon terms for any new contract. Indeed, Kern denied having more than one conversation with Colonial and acknowledged having none at all directly with Standard Fire prior to transmitting the $800.00 check on January 27, 2005.

"normal" bad faith claim, Kern has the burden of proving (1) a breach of the insurance contract; (2) an intentional refusal to pay the insured's claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal; and (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason. *Employees' Benefit Assoc. v. Grissett*, 732 So.2d 968, 976 (Ala. 1998). As the court noted in *Mutual Service Casualty Ins. Co. v. Henderson*, 368 F.3d 1309, 1314 (11th Cir. 2004):

> "Normal" bad faith claims are often referred to as "directed verdict on the contract claim[s]," *Blackburn v Fid. And Deposit Co. Of Maryland*, 667 So. 2d 661, 668 (Ala. 1995), because a plaintiff must show that he is entitled to a directed verdict on the breach of contract claim in order to have his bad faith claim submitted to a jury. *Grissett*, 732 So.2d at 976; *Nat'l Sav. Life Ins. Co. v. Dutton*, 419 So.2d 1357, 1362 (Ala. 1982) . . . (Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim, and thus the legitimacy of the denial thereof, the ["normal" bad faith] claim must fail and should not be submitted to the jury.")

In opposition to summary judgment, Kern does not advance a "normal" bad faith theory, and indeed, such argument would be bootless in light of Kern's insistence that a material, disputed issue of fact precludes Standard Fire's requested summary judgment on the breach of contract claim. Consequently, Standard Fire is entitled to summary judgment to the extent that Kern has asserted a "normal" bad faith claim.

Kern declares unequivocally:  "the instant case is an 'abnormal' bad faith type of case."[12] Whether an insurer properly investigates a claim triggers an "abnormal" bad faith analysis.  In order to recover under a theory of an abnormal case of bad faith failure to investigate an insurance claim, the insured must show (1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the

---

[12]*Pl.'s Br.* at 7.

contract for insurance coverage with the insured when it refused to pay the insured's claim. *Simmons v. Congress Life Ins. Co.*, 791 So. 2d 371, 379 (Ala. 2000).   As the Alabama Supreme Court noted in its 1999 opinion in *Slade*:

> To this date, the abnormal cases have been limited to those instances in which the plaintiff produced substantial evidence showing that the insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim.

*Slade*, 747 So. 2d at 306-307.  *See Blackburn*, 667 So. 2d at 668;  *National Ins. Assoc. v. Sockwell*, 829 So. 2d 111 (Ala. 2002) (insurer bound to "marshal all of the pertinent facts with regard to its insured's claim" before denying coverage).

Kern simply fails to carry his  burden of proving that his case presents an unusual or extraordinary bad faith claim.  Contending that he "has  submitted more than enough evidence to require a factual determination by the jury as to whether Standard Fire created its own debatable reason to deny his claim", Kern  relies on evidence he summarized as follows:

> The evidence . . . indicates that Standard Fire/Travelers created its own debatable reason to deny Mr. Kern's claim for benefits because it is undisputed that Standard Fire/Travelers knew that it had  received and deposited Mr. Kern's $800.00 premium payment to reinstate his policy on February 4, 2005.  It is also undisputed that once Defendant Standard Fire/Travelers accepted and deposited Mr. Kern's $800.00 premium payment, it was bound to reinstate Mr. Kern's insurance policy and provide insurance coverage for any subsequent loss. . . It is also undisputed that Mr. Kern was involved in an automobile accident on February 5, 2005. . .  It is also undisputed that Mr. Kern filed a claim . . . regarding the accident on February 7, 2005. . .  It is also undisputed that on or about February 10, 2005, Defendant Standard Fire sent Mr. Kern a letter and denied his claim for benefits and  "falsely" asserted that it had not received Mr. Kern's $800.00 premium payment until  February 7, 2005, which was after the wreck. . .  It is also undisputed that Defendant Standard Fire/Travelers subsequently refunded Mr. Kern's premium payment on or about February 17, 2005, and has refused to pay his claim for benefits.  The above was committed by Defendant

Standard Fire/Travelers in an effort to create a reason to deny Mr. Kern his benefits.[13]

Kern's theory for abnormal bad faith does not differ materially from an argument for normal bad faith in that his focus rests on whether Standard Fire had a debatable reason for denying his claim. He does not cite Standard Fire for failing to investigate his claim but instead questions if the insurer "created its own debatable reason for denying" his claim.   However, Kern relies exclusively on his inadmissible expert report for his opinions that (1)  Standard Fire accepted the premium payment and thus was obligated to reinstate the policy coverage and (2) created its own debatable reason to deny benefits.[14]

  Accepting all the other cited facts as true, the court readily concludes that Kern's evidentiary proffer creates no material issue of disputed fact regarding the existence of an abnormal bad faith claim. Consequently, summary judgment is appropriate on this claim.


### C.      Fraud Claims

Having voluntarily dismissed Colonial as a defendant without prejudice, Kern's fraudulent misrepresentation (Count III) and Negligent and/or Wanton Misrepresentation (Count IV)  claims target only Standard Fire and only the representation made to him by Colonial "[i]n or around December and again in January of 2005, . . . that if he paid a premium of $800.00 to Defendant Standard Fire, his automobile  insurance policy would continue to be in-force and he would continue to be insured..." (*Am.Compl.* ¶ 5) Because it cannot be disputed that this representation was made in the December 22, 2004 *Offer to Reinstate* and extended to January 11, 2005,  Kern is bound to prove

---

[13]*Pl.'s Br.* at 7-8.

[14]*Pl.'s Br.* at 8, citing *Pl.'s  Ex.* G.

first that Standard Fire made such a *false* representation *after* January 11, 2005.

The court rejects Standard Fire's proposition that its order dismissing *without prejudice* Colonial, the agent purportedly making the representation, effectively operated as a dismissal *with prejudice* of the principal, Standard Fire. Review of the cited case law and federal rule (Fed.R. Civ.P. 41) simply does not compel this result on a record which does not establish the dismissal of Colonial pursuant to a verdict or some other disposition of the substantive claim asserted against agent and principal. These counts against Standard Fire could have proceeded without Colonial as a designated defendant, and notwithstanding the lapsed deadline for amending the complaint, the court retains up to the trial date reasonable discretion on motions for leave to amend complaints.

Standard Fire does advance, however, a meritorious alternative contention: that Kern cannot avoid summary judgment due to his inability to establish substantial evidence of necessary elements for a fraud claim. A recovery for fraud requires Kern to establish (1) a false representation; (2) the representation involved a material fact; (3) he relied on the representation; and (4) he was damaged. *Baker v. Metropolitan Life Ins. Co.*, 907 So. 2d 419, 420-21 (Ala. 2005). Viewing the evidence in Kern's favor leaves compelling doubt with respect to Kern's ability to establish a false representation after January 11, 2005, and to establish the reasonableness of his reliance; his failure to establish either element would be fatal.

The best that can be fairly concluded from a review of Kern's testimony is that he cannot be certain if a Colonial agent made the representation before or after January 11, 2005.[15] With respect

---

[15] Kern Dep.(*Def.'s Ex.* 1) at 47 (reciting his belief that he spoke with a Colonial agent after getting the reinstatement offer and before its expiration on January 11); at 75-76 (testifying that he spoke with Colonial about the offer to reinstate "about a couple of weeks after that, after January 11);
(continued...)

to an issue on which Kern has the burden of proof (i.e., the fact of a false representation), Kern must demonstrate his ability to carry that burden with substantial evidence of the element, or he must create a disputed issue of material fact for the jury's resolution. The entirety of his testimony on the existence of the false representation consists of a definite account that it occurred before January 11 followed by a blanket assertion that it occurred after January 11, and ending with an acknowledgment of his uncertainty on the date. That such proof falls woefully short of the "substantial evidence" contemplated by Alabama law is evident from the statutory definition: "evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven. A scintilla of evidence is insufficient to permit submission of an issue of fact to the trier of facts." ALA. CODE § 12-21-12(d) (1975); *West v. Founders Life Assurance Co. of Florida*, 547 So. 2d 870, 871 (Ala. 1989) (nonmovant on summary judgment must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved").

Regarding Kern's reliance on the false representation, assuming its occurrence after January 11, the Alabama Supreme Court's substitution of "justifiable reliance" with "reasonable reliance" as the proper standard to evaluate such reliance is critical analytically. The court deemed the former standard no longer practical as it "eliminated the general duty on the part of the person to read the documents received in connection with a particular transaction." The new standard "allow(s) the fact

---

[15](...continued)
at 108-110 (conceding his uncertainty on the timing of his conversation). Kern's affidavit testimony pinpoints a conversation with a Colonial agent *after* the January 11, 2005 deadline (Kern Aff., *Pl.'s Ex.* C).

finder greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining powers of the parties." *Foremost Ins. Co. v. Parham*, 693 So. 2d 409 (Ala. 1997).

The evidence establishes Kern generally as an intelligent, adult businessman with prior insurance dealings and specifically as one who understood the actual notices – stated in simple clear language – of his expired policy and his limited opportunity to reinstate the policy.[16]    That he reasonably relied on a representation at odds with the written notice is too problematic when he cannot substantiate the communications generating his reliance; the court need not and will not make any finding on this issue but instead examines only whether Kern can establish his reasonably reliance by substantial evidence.    Kern argues the absence of any inconsistency between the oral representation and the written reinstatement offer because the latter "does [not] state that an additional premium payment of $800 would not reinstate [his] policy.  Such reasoning is  wholly unpersuasive as  the reinstatement offer left no ambiguity on the amount and deadline necessary to activate again the lapsed policy.

## IV.  CONCLUSION

Pursuant to the foregoing *Memorandum Opinion*, it is **ORDERED** as follows:

1.  Defendant *Standard Fire's Motion for Summary Judgment* (Doc. 31, April 19, 2006) is

---

[16]Kern's undisputed deposition testimony reveals he read the *Offer to Reinstate* and understood the terms. (*Kern Dep.* at 43-46; see 13-20 and 16 regarding Kern's education, business and insurance experience).

GRANTED.   A Final Judgment is entered herewith.


2.   The scheduled pre-trial conference on July 20, 2006, and the jury trial scheduled to commence on August 21, 2006,  are hereby CANCELLED.


3.   The Clerk is INSTRUCTED to terminate the "Motion to Withdraw" docketed as no.  42 as the court resolved all issues related thereto in the Order filed July 7, 2006 (Doc. 51).


Done this 13TH   day of July, 2006.


/s/ Delores R. Boyd

DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE